UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

CIVIL ACTION NO. 1:06-CV-69

WESTPORT INSURANCE CORPORATION and
EMPLOYERS REINSURANCE CORPORATION                                    PLAINTIFFS

V.

ENERGY FINANCIAL SERVICES, LLC;
DAVE BAUMGARTNER;
ENERGY INSURANCE AGENCY, INC.;
JEFF MCINTOSH;
LIFELINE HEALTH GROUP, INC.; and
LIFELINE HEALTH CARE, INC.                                           DEFENDANTS

## MEMORANDUM ORDER AND OPINION

This matter is before the Court upon cross-motions for summary judgment in this declaratory

judgment action.  The Plaintiffs and the Defendants, Energy Financial Services, LLC and Energy

Insurance Agency, Inc. ("the Energy Parties"), each argue that they are entitled to summary

judgment on the issue of whether the Plaintiffs must defend and indemnify the Energy Parties in the

underlying action brought against them by  Lifeline Health Group, Inc., and Lifeline Health Care,

Inc. ("Lifeline"), for breach of contract and negligence, which is pending in this Court.  Fully

briefed, this matter is ripe for decision.  For the following reasons, the Energy Parties' motion for

summary judgment is **GRANTED** and the Plaintiffs' motion for summary judgment is **DENIED**.

### I. FACTS

The Lifeline entities are healthcare providers.  In 2003, they began researching various

options for providing a group health insurance plan for their employees. At some point, they met

with representatives of the Energy Parties. According to Lifeline, the Energy Parties represented that

they could develop and implement an employee group health plan for Lifeline.  The plan presented

to Lifeline was one developed by an individual named Milton Pullen who marketed a self-insured, employer-sponsored health plan administered by a third-party administrator, in this case, Consumer Health Solutions ("CHS").   On January 1, 2004, CHS and Lifeline signed a fully-funded ERISA Health Insurance Plan (the "Plan"). (DN 39, Attach. 4, Administrative Services Agreement). Under the Plan, Lifeline was to pay monthly premiums which CHS was to hold in a segregated account and with which CHS was to both pay Lifeline employees' medical claims and purchase various reinsurance policies. By the spring and summer of 2004, however, CHS was failing to promptly or fully pay the claims of Lifeline's employees.   There is evidence which suggests that CHS did not pay these claims because it had improperly commingled and/or misappropriated its clients premium contributions to their respective trusts. Accordingly, in October 2004, Lifeline contracted with Fiserv Health Tennessee to become the Third-Party Administrator of the Plan.  Fiserv, however, was unable to pay the claims of Lifeline's employees because it never received any trust funds from CHS.

As a result of the non-payment of their medical claims, Lifeline's employees sued Lifeline in this Court. (See, e.g., <u>Appling v. Lifeline</u>, 1:05-CV-187)  Lifeline, in turn, filed an Amended Third- Party Complaint against the Energy Parties.  The Amended Third-Party Complaint alleges the following causes of action against the Energy Parties: breach of fiduciary duty, breach of contract, negligence, and misrepresentation.

The Plaintiffs in this declaratory judgment action are Westport Insurance Corporation ("Westport") and Employers Reinsurance Corporation ("ERC").  At all pertinent times, the Energy Parties were insured under professional liability policies issued by Westport and ERC.  These policies were "error and omissions" policies which generally provided coverage for acts of negligence by the insured. Pursuant to these policies, the Energy Parties tendered Lifeline's Third-

Party Complaint to Westport and ERC and they agreed to retain defense counsel for the Energy Parties "subject to a full and complete reservation of rights." The policies contain certain exclusions to coverage related to the commingling of funds and insolvency which are at issue in this case. Westport and ERC ask the Court to declare that they are not required to defend and indemnify the Energy Parties because of the commingling and insolvency exclusions under the policies. The Energy Parties contend that these exclusions are not applicable, and therefore, the policies require Westport and ERC to defend and indemnify them.

## II. LEGAL STANDARD

In order to grant a motion for summary judgment, the Court must find that the pleadings, together with the depositions, interrogatories and affidavits, establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The moving party bears the initial burden of specifying the basis for its motion and of identifying the portion of the record which demonstrates the absence of a genuine issue of material facts. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party themselves thereafter must produce specific facts demonstrating that a genuine issue of fact exists for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show that there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Co., 475 U.S. 574, 586 (1986). The Rule requires the non-moving party to present "specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The mere existence of scintilla of evidence in support of the [non-moving party's] position will be insufficient, there must be evidence on which

the jury could reasonably find for the [non-moving party]." Anderson, 477. U.S. at 252.  It is against

this standard that the court reviews the following facts.

### III. ANALYSIS

**A. The Insurance Policies**

The Westport and ERC policies at issue here are "error and omissions" professional liability

policies.  They cover their respective insureds for liability arising out of professional negligence in

the insurance business.  For example, the ERC policy provides that ERC will "pay on behalf of the

Insured such loss...sustained by the Insured by reason of liability imposed by law for damages

caused by...(a) any negligent act, error or omission of the Insured or any person for whose acts the

Insured is legally liable...arising out of the conduct of the business of the Insured, in rendering

professional services for others as an...insurance consultant..."(DN 39, Attach. 16, ERC Policy, §

1).  Similarly, the Westport policy states that Westport "will pay on behalf of the insured "loss" for

which the insured is legally liable caused by  "wrongful acts" (defined as a "negligent act, error,

omissions") committed by an insured arising out of "professional services" rendered to others. (DN

39, Attach. 19, Westport Policy, § 1.A.)  Both policies also provide that the insurance companies

have "the right and duty to defend" the insured in any claim or suit for which the policies provide

coverage. (See, e.g., ERC Policy, Westport Policy, § 3. A.)

**1. The "Commingling" Exclusions**

The Plaintiffs contend that the policies' commingling exclusions are applicable here since

CHS, the Third-Party Administrator of the employee insurance plan, commingled Lifeline's funds

with the funds of other clients and this commingling was at least one reason CHS was unable to pay

the medical claims submitted by Lifeline's employees.  The Energy Parties, on the other hand,

contend that the commingling exclusions do not apply to them because they did not commingle

Lifeline's funds.

Both the ERC and Westport policies contain "commingling" exclusions.  The ERC policy states:

> *This policy does not apply to....(i) claims for commissions, taxes, or the failure to collect, pay or return premiums or the commingling or use of client's funds.....*

(DN 39, Attach. 16, ERC Policy, Section VI).

Somewhat differently, the Westport policy provides:

> *This "policy" shall not apply to any "claim" based upon, **arising out of**, attributable to, or directly resulting from:*
>> *...*
>> ***FUNDS**. Conversion, misappropriation, or improper commingling of client funds or funds held for the benefit of the client.....*

(DN 39, Attach. 19, The Westport Policy)(emphasis added).

**2. The "Insolvency" Exclusions**

The Plaintiffs also contend that the "insolvency" exclusions of the ERC and Westport policies allow the Plaintiffs to disclaim coverage here. Section VI of the ERC policy states:

> *This policy does not apply to:*
>> *...*
>> *(f) any claim **arising out of** or in connection with the financial inability to pay, insolvency, receivership, bankruptcy, or liquidation of any insurance company, any reinsurer, any pool, syndicate, association or other combination formed for the purpose of providing insurance or reinsurance;*

(DN 39, Attach. 16, ERC Policy, Section VI)(emphasis added).

Similarly, the Westport policy provides:

> *This "policy" shall not apply to any "claim" based upon, **arising out of**, attributable to, or directly resulting from:*
>
> *INSOLVENCY. The financial inability to pay, insolvency, receivership, bankruptcy or liquidation of any insurance company...self-insured plan or any pool, syndicate, association, or other combination formed for the purpose of providing insurance or reinsurance, or any healthcare provider or any reinsurer with which the Insured directly placed the subject risk.....*

(DN 39, Attach. 19, The Westport Policy)(emphasis added).

The Court must determine whether Lifeline's claims against the Energy Parties are excluded from coverage by either of these exclusions.

## B.  Kentucky Law

In Kentucky, the interpretation of an insurance contract is a matter of law. Westerfield Ins. Co. v. Tech Dry Inc., 336 F.3d 503, 507 (6th Cir. 2003)(citing Stone v. Ky. Farm Bureau Mut. Ins. Co., 34 S.W.3d 809, 810 (Ky. Ct. App. 2000)).[1]  In Kentucky, an insurance company has a duty to defend its insured if the language of the underlying complaint against the insured brings the action within the scope of the insurance contract. Id.  Kentucky courts liberally construe insurance contracts in favor of insureds "to provide insurance coverage and thereby make insurance effective." Kentucky Farm Bureau Mut. Ins. Co. v. McKinney, 831 S.W.2d 164, 167 (Ky. 1992).

Importantly, where the interpretation of policy exclusions is required, "Kentucky law is crystal clear that exclusions are  to be narrowly interpreted and all questions resolved in favor of the insured." Eyler v. Nationwide Mut. Fire Ins. Co., 824 S.W.2d 855, 859 (Ky. 1992).  However, exclusion clauses are not "inoperative' in Kentucky and "the interpretative canon disfavoring exclusion clauses operates only where the policy language is found to be ambiguous." Estate of Clem v. W. Heritage Ins. Co., 195 Fed. Appx. 328, 332 (6th Cir. 2006)(citing Ky. Farm Bur. Mut. Ins. Co. v. Thompson, 1 S.W.3d 475, 476-477 (Ky. 1999)).  Where an exclusion is susceptible to two reasonable interpretations, the ambiguous terms will be interpreted according to the reasonable expectations of the insured.  U.S. Fidelity and Guar. Co. v. Preston, 26 S.W.3d 145, 149 ( Ky., 2000).

## C. Discussion

---

[1]The parties agree that Kentucky contract law is applicable here.

The primary dispute between the parties is over the "arising out of" language contained in three of the four exclusions.   Indeed, it is clear to the Court that the ERC commingling exclusion which does not include the "arising out of" language is not applicable here since it only excludes coverage for claims actually made for commingling.  Lifeline has made no such claim against the Energy Parties.

The other exclusions are more difficult because the "arising out of language" makes it plausible that the exclusions should preclude coverage in situations like the one presented here.[2] For example, even though Lifeline has made no direct claims against the Energy Parties for the commingling of funds or the insolvency of its self-insured trust, the Plaintiffs argue that Lifeline's claims against the Energy Parties nonetheless "arise out of" the commingling and insolvency. Despite the reasonableness of this interpretation, however, it appears the Kentucky courts find another interpretation to be reasonable as well.

In St. Paul Fire & Marine Insurance Co. v. Powell-Walton-Millard, Inc., the Kentucky Supreme Court was asked by the Sixth Circuit Court of Appeals to certify the law on the following question:

---

[2]The Plaintiffs argue that these exclusions are broad, unambiguous, and clearly exempt them from their duties to the Energy Parties in the underlying action. To support this contention,  the Plaintiffs rely on several non-Kentucky cases in which courts have held that similar exclusions preclude coverage for the insured.  The Court, however, finds these cases unhelpful and unpersuasive since they involve fact patterns in which the insureds themselves (or in one case, an employee)  - and not some third-party - were accused of improperly commingling client funds or managing trusts into insolvency.  See, e.g., Northland Ins. Co. v. Stewart Title Guar. Co., 327 F.3d 448 (6th Cir. 2003)(insurer not required to defend and indemnify insured under commingling exclusion even if the alleged commingling by the insured was negligent and not intentional); Fidelity National Title Insurance Co. of New York v. OHIC Insurance Co., 275 Ga. App. 55 (Ga. App. 2005)( pursuant to a commingling exclusion insurer did not owe insured attorney coverage since she was sued for the improper commingling of client funds); CNA Casualty of California v. E.C. Fackler, Inc., 361 Ill. App.3d 619 (Ill. App. 2005)(insolvency exclusion of professional liability policy barred coverage of insured where insured was sued for managing three trusts into insolvency); Bankers Multiple Line Ins. Co., Inc. v. Pierce, 20 F. Supp.2d 1004 (S.D. Miss. 1998)(where insured was sued for the negligent supervision of an employee who had engaged in activity excluded by the subject policy, insurer was not required to provide coverage for insured since claims against insured were interdependent upon the excluded conduct of the employee). K. Bell & Assocs., Inc. v. Lloyd's Underwriters, 97 F.3d 632 (2nd Cir. 1996)

> When an insurer...of an insurance broker....issues a liability insurance policy which promises coverage to the insurance broker for losses resulting from "an error, omission or negligent act committed in the . . . sale and placement of insurance," but which also excludes from coverage claims by customers of the insurance broker "that result from the inability of an insurance company . . . to pay all or part of insured claims," does the exclusion unambiguously deny coverage to the insurance broker who suffers losses as a result of negligently recommending an insurance company that subsequently becomes insolvent?

870 S.W. 2d 223 (Ky. 1994).   The facts in P-W-M are very similar to the facts presented here: in P-W-M, the insured, an insurance agency, had recommended to several of its clients that they join a self-funded insurance trust and that trust became insolvent.  The errors and omissions policy which covered the insured stated: "We'll pay amounts you and other protected persons are legally required to pay to compensate others for loss that results from an error, omission or negligent act committed in the conduct of your insurance business."  But the policy continued: "We won't cover claims that result from the inability of an insurance company, joint writing association, or any similar entity to pay all or part of insured claims."  The insurance companies argued that although the claims brought by the insured's clients against the insured were for negligence, the injury giving rise to such claims was the inability of the trust to pay the claims for medical expenses due to the insolvency of the trust. The Kentucky Supreme Court disagreed and found coverage was not excluded because when the coverage provision was read with the insolvency exclusion, it rendered the policy  susceptible to two reasonable interpretations and, in such situations, "the interpretation favorable to the insured is adopted." Id. at 226.

This Court sees no legal or factual distinction between this case and P-W-M.  Although the P-W-M case is somewhat difficult to decipher at times, its conclusion is not. After noting that the insolvency of an insurance company could occur "without the occurrence of an error on the part of the recommending third party, " the Kentucky Supreme Court held that policy exclusion was ambiguous because it did not clearly state that there would be no coverage for claims arising from

the inability of an insurance company to pay claims, <u>even though</u> the agent did not commit a "wrongful act" in connection with the insolvency.  The Supreme Court stated even when an insurance provision is not ambiguous on its face, it may become ambiguous when applied to a particular claim." <u>Id</u>. at 227.   Thus, the Court seems to have concluded that where an insurance company intends an exclusion to exclude coverage in situations that arise due to the acts of a third-party, and not the insured, the insurance company has a duty to explicitly so provide. The Court noted  that "it would seem, obviously, a relatively simple matter for St. Paul to have written its limitation expressly to exclude inability to pay, irrespective of a wrongful act or not."  <u>Id</u>. at 227.

The policy exclusions in this case suffer from the same lack of precision, particularly when applied to these claims.  Neither exclusion tells the agent that there will be no coverage for negligence even if is a third-party that commingles funds or causes the insolvency, irrespective of whether the agent had anything to do with it or not.  The Court believes that after <u>P-W-M</u> such provisions must be considered ambiguous.  The Energy Defendants could reasonably have expected coverage in a situation like this where it is undisputed that they had nothing to do with the commingling of funds or insolvency of the trust fund.

This holding is also in congruence with <u>Kentucky School Boards Ins. Trust v. Board of Education of Woodford County</u>,  an unpublished decision of the Court of Appeals of Kentucky, in which the insurance contract at issue contained an exclusion using the words  "arising out of..." and the excluded conduct was committed not by the insured but by its employee. 2003 WL 22520018 (Ky. App. 2003). In that case, a student accused his teacher of sexual molestation and sued the school board for the "negligent hiring" of the teacher.  The school board's insurer contended that it was not required to defend the school board because the subject policy contained exclusions stating that the insurer would not be liable "for Loss related to or arising out of...any claim based

upon or arising out of bodily injury, sickness, disease or death, mental or emotional injury or distress...or..any claim based upon or arising out of ....assault and battery." Id. at *3. The court held, however, that the "negligence...claims brought by [the student] did not 'arise out of' an assault and battery or bodily injury." Id. at *11. It reasoned that "[b]ecause the alleged liability of the Board is predicated upon its conceptually independent negligent supervision, application of the subject exclusions would 'effectively eviscerate the errors and omissions policy altogether' contrary to Kentucky law." Id. (quoting Watkins Glen Central School District et al. v. National Union Fire Ins. Co. of Pittsburgh, 286 A.D.2d 48 (N.Y. App. Div. 2001)); see also Board of Public Educ. of the School Dist. of Pittsburgh v. National Union Fire Ins. Co., 709 A.2d 910 (Penn. 1997)). Likewise, Lifeline's claims against the Energy Parties are predicated upon the "conceptually independent" tort of negligence and application of the subject exclusions would "effectively eviscerate the errors and omissions polic[ies]" at issue here.

Thus, "placing the appropriate emphasis on the purpose of an errors and omissions policy, namely to protect against acts of professional negligence," and relying on the two Kentucky cases discussed above, the Court concludes that none of the cited exclusions unambiguously excuse the Plaintiffs from defending and indemnifying the Energy Parties. Watkins Glen, 286 A.D.2d 48 at 52-53.

And, finally, other than arguing the applicability of the commingling and insolvency exclusions, the Plaintiffs made no response to the Energy Parties motion for summary judgment on all the other counts set forth in the Complaint, and thus, the motion is granted on those counts as well.

## IV. CONCLUSION

For the foregoing reasons, the Plaintiffs' motion for summary judgment is **DENIED** and the

Defendants' motion for summary judgment is **GRANTED**.  **IT IS SO ORDERED.**

cc: Counsel of Record